**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>BERRY GENERAL ENGINEERING CONTRACTORS, INC., a California corporation; and MENDEZ CONCRETE, INC., a California corporation,<br><br>　　　　Defendants. | **Case No. CV 09-1250 GAF (Ex)**<br><br>MEMORANDUM & ORDER REGARDING BERRY'S MOTION FOR SUMMARY JUDGMENT |

**I.**

**INTRODUCTION**

In this case, Berry General Engineering Contractors, Inc. ("Berry"), who entered into a contract with the United Water Conservation District ("District") to construct the Juan Fernandez Boat Launch Facility Project at Lake Piru in Ventura County, seeks to avoid responsibility for the acts of its subcontractor, Mendez Concrete, Inc. ("Mendez"), who ignited a fire that consumed 36,000 acres of the Los Padres National Forest. The fire started when a Mendez employee used a circular saw to remove a metal bolt from corrugated steel piping, causing hot metal fragments to be thrown into nearby brush. The brush was so dry that it ignited into a conflagration that very quickly burned out of control.

The United States manages the Los Padres National Forest through the United States Forest Service and incurred damages resulting from the fire, including costs of suppression, resource damage and emergency rehabilitation. Through a variety of negligence-based and trespass theories, the United States contends that Berry, as the general contractor on the project, should be held liable for all damages resulting from the acts of its subcontractor. In support of its claims, the United States relies heavily on Berry's contract, which required it to clear and grub brush in accordance with plan specifications, and a Uniform Fire Code welding ("hot work") permit that Ventura County issued to Berry in 1991. The permit allows the use of welding equipment to weld or cut throughout Ventura County, subject to compliance with specified terms and conditions; those conditions include compliance with certain safety precautions for "cutting or welding within brush or grass covered land." (Sainsbury Decl., Ex. C.) Essentially, the United States claims that Berry was obligated to clear vegetation around the cutting area, arrange for a fire watch during the cutting operations, and provide proper firefighting equipment in the area, and that its failure to do so breached a duty to the United States.

Berry, on the other hand, contends that it cleared brush as mandated under the terms of its contract with the District, and that it had no duty to the government with respect to the work performed by Mendez. Berry contends that the permit is of no significance because, even assuming that it imposed an obligation with respect to "hot work" performed by Mendez, the subcontract did not require Mendez to perform "hot work" to complete its scope of work. Further, Berry contends that the use of a circular saw did not constitute "hot work" and that, given Mendez's scope of work, its use was not foreseeable to Berry. Accordingly, Berry now moves for summary judgment on the ground that it breached no legal duty in connection with the fire.

The Court concludes that the motion for summary judgment must be denied because there are, at the very least, genuine issues of material fact that must be resolved

by the trier of fact. The record clearly establishes that the project was being constructed in a fire-prone area, that the construction work was being performed during the height of the fire season, that numerous other wild fires were already burning when this fire was ignited, and that Berry was conducting regular fire safety meetings with its crew during the relevant time period. Berry plainly understood the fire risk involved and arguably could have foreseen that its subcontractor would be engaged in activities that created a fire hazard. In these circumstances, the Court cannot say, as a matter of law, that Berry has no liability for the conduct of its subcontractor. For these and other reasons discussed in greater detail below, the motion for summary judgment is **DENIED.**

## II.

## BACKGROUND

In October 2003, Southern California experienced the largest accumulation of dangerous wildfires and the "largest mobilization of firefighting resources in California's history."[1] Due to drought periods, warm temperatures, low humidity, and the presence of many dead trees following a bark beetle infestation, the region had become "a kindling box waiting for a fire to occur." Between October 21 and October 23, 2003, three significant fires ignited in Riverside and San Diego counties. Two days later, on October 23, 2003, the Piru Fire started when, as discussed above, a Mendez employee permitted hot sparks to ignite nearby dry brush.

**A. CONSTRUCTION PROJECT TIMELINE**

The District hired Berry to serve as general contractor during the construction of the Juan Fernandez Boat Launching Facility (the "Project") at Lake Piru Recreation Area ("Construction Site"). Berry performed the rough grading on the Project, which included clearing and grubbing of vegetation within the Project limits. (Plaintiff's

---

[1] In discussing the general circumstances surrounding the October 2003 fire emergency, the Court adopts the chronology of events described in the Report to the Governor of the Blue Ribbon Fire Commission. (Declaration of Jonathan B. Klinck, Docket No. 44, Ex. C.)

3

Statement of Genuine Issues (SGI) Nos. 5, 25.) The project also called for the construction of a concrete catch basin at the Construction Site, which included the installation of a corrugated steel pipe culvert. (SGI No. 36; Declaration of Robert Sainsbury, Ex. D.) On August 13, 2003, Berry subcontracted that portion of the work to Mendez. The subcontract agreement provides that "Subcontractor agrees to furnish all labor, materials, equipment and other facilities required to complete the following work[:] Storm Drain & Miscellaneous work as detailed in Section 15." (Sainsbury Decl., Ex. D, at 1.) Section 15, in turn, provides for purchase of CSP or corrugated steel piping, in connection with the storm drain project. (Id. at 3.) The contract contains no broader description of the work to be completed and is silent regarding the possibility that it may encompass hot work.

On or about October 2, 2003, installation of the culvert and catch basin was deleted from the Project because Berry and the District intended to use the natural contours of the area to effect storm drainage. (See pages BERRY 422, 423, and 1162, attached to the Declaration of Jonathan Klinck, Ex. 3.) However, "field revisions" (Id. at BERRY 414.) were suggested on October 21, 2003, and representatives from Berry and the District agreed that the culvert and catch basin should be added into the Project plan once again. (Id.) The District's later description of these field revisions stated that installing "the storm drain at this location reduces the amount of hillside grading required to restore the original drainage course [and] provides better protection for the parking lot fill slope." (Id.)

Thus, on October 23, 2003, installation of the Project storm drain was being conducted by Mendez employee Michael Hogan. (SGI No. 7.) During the course of the installation, Mendez and/or Hogan had placed a bolt on a drainage conduit in one portion of the storm drain. (Berry's Reply to Separate Statement of Genuine Issues (Reply SGI) No. 33.) Hogan then "used a gasoline powered radial saw to cut" the bolt

4

off the conduit, and sparks from that saw "went into the brush surrounding the conduit" and started the Piru fire. (Id.)

Photographs of the area where Hogan performed his cutting (see Declaration of Rolf Larsen, Pl. Evidence Opp., Tab 3.) clearly depict the location of the bolt assembly next to what remains of surrounding vegetation. (Id. photograph 5.) These photographs were taken on the day of the fire, October 23, 2003 (See Larsen Decl.), and they indicate that dry brush or other vegetation was growing in an area almost <u>immediately</u> adjacent to the bolt assembly where Hogan performed his cutting.[2]

**B. PERMITS AND FIRE SAFETY**

The risks of fire in the rural mountainous areas of Southern California are well understood. Accordingly, Uniform Fire Code ("U.F.C.") permits must be obtained by contractors who seek to perform work that creates a fire hazard. Berry was a long-term holder of such a permit. In April 1991, it obtained U.F.C. Permit 90-FP386 from the Ventura County Fire Protection District, which was effective "until revoked.". (Sainsbury Decl., Ex. C.) The parties concede that the permit was in effect at the time of the Piru fire. The permit, which requires that Berry "[c]omply with...Fire Code Article 49" applicable to "hot work" operations, includes a number of specified precautions that must be followed in the performance of such work. (Declaration of Robert Sainsbury, Ex. C.) The precautions include the admonition that when "cutting or welding within brush or grass covered land, all flammable materials must be cleared to mineral earth for a distance of ten feet from the joint worked on, and at least one man [must] be stationed...to watch for fire." (Id.)

Berry was careful to adhere to its obligation to follow good fire safety practices. During the course of its work on the Project, and specifically in October 2003, Berry

---

[2] According to the United States, the "Piru Fire injured or destroyed" more than 36,000 "acres of National Forest System lands and other property of the United States." (Compl. ¶¶ 8, 18, 22, 26.) The government seeks recovery of "suppression costs, burn area emergency rehabilitation costs, [and] resource damages" in the burn area, as well as "administrative, investigative, accounting and collection costs" related to the fire. (Id. ¶¶ 16, 22.)

5

held meetings for its employees regarding fire prevention, fire safety, and procedures for safe welding and cutting. (Reply SGI No. 38.) On October 6, 2003, Berry held a weekly safety meeting with its employees at the "Piru" site and discussed fire prevention and fire safety. (Klinck Decl., Ex. 3, at BERRY 3078.) Additionally, on October 20, 2003—three days before the culvert and drainage work by subcontractor Mendez took place—Berry held a weekly safety meeting for the "Piru" site workers specifically concerning "welding and cutting." (Id. at BERRY 3084.) The meeting notes discussed "safe welding practice" and stated that "[b]ecause welding produces extreme heat and sparks, you must take proper precautions to prevent fires." (Id.) The meeting notes also urged Berry employees to "Make your work area fire safe by...removing nearby combustible materials." (Id.) Berry did not conduct any similar safety meetings with Mendez employees.[3] (Reply SGI No. 40.)

## III.

## DISCUSSION

### A. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c). Thus, when addressing a motion for summary judgment, this Court must decide whether there exist "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.

---

[3] Berry notes in its Reply SGI that "the USA's supporting evidence" in the form of meeting-related documents "does not support" the contention that Berry did not discuss fire prevention and safety with Mendez; however, Berry offers no evidence suggesting it actually conducted any fire safety discussions with Mendez. (Reply SGI at No. 40.) As discussed below, the Court considers the evidence in the light most favorable to the non-movant, and in that light, the evidence indicates that Berry did not meet with Mendez.

6

See id. at 256. Where there is no evidence demonstrating the existence of a genuine issue of material fact, the moving party may prevail simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). To defeat a motion for summary judgment, a non-movant must generally "produce evidence to support its claim or defense" which "create[s] a genuine issue of material fact" regarding its claim or defense. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1103 (9th Cir. 2000).

**B. NEGLIGENCE**

Under California law, a party claiming negligence must show: (1) a legal duty to use due care; (2) a breach of that duty; and (3) that the breach was the "proximate or legal cause" of the resulting injury. Ladd v. County of San Mateo, 911 P.2d 496, 498 (Cal. 1996). The "existence and extent of a duty of care are questions of law, but proximate cause and whether such a duty has been breached are questions of fact." Martinez v. Korea Shipping Corp., 903 F.2d 606, 609 (9th Cir. 1990). Thus summary judgment "is rarely granted in negligence cases. Whether the defendant acted reasonably is ordinarily a question for the trier of fact." Id.

**C. APPLICATION**

**1. GENERAL NEGLIGENCE LIABILITY**

Under California law, a general contractor who undertakes the responsibility to perform construction work may be held liable for injuries to third parties resulting from the negligence of his subcontractor. Dow v. Holly Mfg. Co., 49 Cal. 2d 720, 725-26 (1958). The California Supreme Court observed:

> The contractor, equally with the owner of the property, has supervision over the entire building and its construction, including the work performed by a subcontractor, and where he negligently creates a condition, either by himself or through a subcontractor, he is primarily responsible for that condition and the consequences that may follow from it.

Id. Although <u>Dow</u> involved a defective or dangerous condition of a residence that was not apparent to the occupants, the reasoning of the case includes nothing to suggest that the subcontractor's negligence during the performance of his duties would not likewise expose the general contractor to liability. More to the point, although Berry contends that it owed the United States no legal duty under the circumstances of this case, it has cited to no authority, controlling or otherwise, in support of that broad claim. In fact, the law of negligence suggests otherwise.

The analysis can be summed up almost entirely by reference to the standard negligence jury instruction which provides that a negligent act includes "the failure to do something which a reasonably prudent person would do, under circumstances similar to those shown by the evidence." BAJI, Instruction No. 3.10 (Fall 2009 Ed.) The duty to act turns on whether a reasonably prudent person in the same situation "would have foreseen or anticipated that someone might have been injured by or as a result of his action or inaction." <u>Id.</u>, Instruction No. 3.11. The instruction reflects what has long been understood—that the existence of a duty "always relates to some circumstance of time, place and person." <u>Fouch v. Werner</u>, 279 P. 183, 99 Cal. App. 557, 564 (1929). In other words, the "legal duty" of care arises in circumstances where the person is engaged in activities from which harm might reasonably be anticipated. "The risk reasonably to be perceived defines the duty to be obeyed." <u>Bryant v. Glastetter</u>, 38 Cal. Rptr. 2d 291, 294 (Ct. App. 1995) (quoting <u>Palsgraf v. Long Island R.R. Co.</u>, 162 N.E. 99, 100 (N.Y. 1928).)

In the present circumstances, the facts indicate that Berry owed a duty to the District (with whom it contracted), and others within the zone of danger, to take steps to avoid the reasonably foreseeable risk of fire resulting from the construction of the boat landing. <u>Bryant</u>, 38 Cal. Rptr. 2d at 295 (existence of duty turns on general consideration of "whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced."). Berry clearly understood this duty,

as evidenced by its status as a fire permit recipient and its conduct of regular fire safety meetings, including meetings with Lake Piru site employees. Accordingly, in connection with the construction of the boat landing, a project over which it had supervision and for which it was primarily responsible, Dow, 49 Cal. 2d, at 725, Berry was obligated to take those actions that a reasonably prudent general contractor would have taken under the circumstances known to it on October 23, 2003.[4]

Whether Berry breached that duty is a question of fact that cannot be resolved on a motion for summary judgment. The trial will likely involve the presentation of evidence regarding: (1) the time of year when the work was performed; (2) the particular fire hazard that existed in October 2003, including evidence concerning the numerous other wildfires burning in Southern California; (3) the precise nature of the construction work performed at the site; (4) Berry's completion of its contractual obligation to clear and grub the site; (5) the nature of the work performed by Mendez;[5] (6) the reasons, if any, for relying on Mendez to adhere to proper safety precautions at the construction site; and (7) the reasons for not including Mendez personnel in the

---

[4] The government proposes numerous theories by which Berry owed a legal duty. These include claims that Berry had: (1) a duty to maintain a safe construction site and properly supervise Mendez's work; (2) a non-delegable duty to comply with the terms of Berry's Ventura County hot work permit; (3) a duty to comply with state and local ordinances and statutes; (4) a duty to hire competent and careful subcontractors; (5) a duty to assume responsibility for the work of Mendez, as an allegedly non-independent contractor; (6) a duty under the "peculiar risk" doctrine; (7) a duty under the "negligent undertaking" doctrine"; and (8) a duty to prevent, control, and suppress fires starting on the construction site. (Opp. at 9-10; 15-16.) In the Court's view, the Government's assertions are not so much legal theories as they are grounds for asserting that the duty was breached in the present circumstances. The first ground essentially states a general negligence claim which the Court has analyzed just above. The duty to hire competent contractors, to assume responsibility for Mendez's work, to take note of the "peculiar risks" presented in October 2003, and to take steps to prevent and control fires at the site are facts that bear on whether the duty was breached. In the Court's view, only the permit argument and the negligence per se claim (the need to comply with state and local ordinances) warrant further discussion.

[5] Berry presents evidence from its Project manager and Vice President, who opines that the use of a saw by Mendez's employees was not foreseeable. (Sainsbury Decl. ¶ 14.) The United States suggests otherwise. (Jarvis Decl. ¶ 8.) Plainly, this is a factual dispute that will be presented and resolved by the trier of fact. The record will not permit the Court to rule, as a matter of law, that a construction worker's use of a saw to remove a bolt from corrugated steel piping could not have been foreseen.

safety meetings. In short, the Court cannot summarily adjudicate the negligence claim in Berry's favor.

### 2. NON-DELEGABLE DUTY

An alternative basis for Berry's negligence liability is its non-delegable duty under the Ventura County welding and "hot work" permit. Under California law, "one party may owe a duty to another which, for public policy reasons, cannot be delegated." Barry v. Raskov, 232 Cal. App. 3d 447, 455 (1991). A party "owing such a duty cannot escape liability for its breach simply by hiring an independent contractor to perform it." Id. Indeed, the "principle that a licensee will be held liable for the acts of its agents is one that has been applied whether the agent is an independent contractor or an employee." Cal. Ass'n of Health Facilities v. Dep't of Health Servs., 16 Cal. 4th 284, 296 (1997). Camacho v. Youde, 95 Cal. App. 3d 161 (1979), concerned a license to engage in aerial pesticide spraying, and held that duties connected to that license could not be delegated to an independent contractor. Health Facilities, 15 Cal. 4th at 296 (discussing Camacho, 95 Cal. App. 3d at 164.). Camacho also collected cases involving licenses to operate pharmacies and conduct alcoholic beverage sales, 95 Cal. App. 3d at 164, and concluded that "we hold [the licensee] to the conduct prescribed by statute for operating his...business." Id. at 165. Thus, a "licensee must be responsible for his employees' conduct in pursuing the business for which his license is required," Id. at 163, and under Health Facilities, the rule applies with equal weight to those who engage independent contractors.

Here, it is undisputed that Berry's hot work permit specifically addressed the fire-related dangers of welding and cutting, and prescribed fire safety precautions that included clearing and grubbing and maintaining a fire watch. (Sainsbury Decl., Ex. C, at 2.) The permit is comparable to the aerial-pesticide-spraying and pharmacy-operating licenses examined in Health Facilities and Camacho. Berry presents no compelling argument as to why it should be allowed to delegate its fire safety duties to Mendez.

Berry argues, however, that requiring compliance with the hot work permit is akin to finding that "since Berry has a permit, they need to clear and grub" vegetation according to permit terms "on every project regardless of the type of work being done," just in case "some subcontractor's employee...starts performing hot work on a project that does not call for that type of work." (Mot. at 12-13; <u>see also</u> Reply at 6 (citing Mendez's response to Berry's Request for Admissions, No. 10, and Mendez deposition testimony to the effect that Mendez's scope of work did not involve hot work.); Sainsbury Decl. ¶¶ 6-7, 10 (statement by Berry's Vice President that its scope of work did not include welding or hot work, and that no "welding permit was required to be obtained" for the Project.).) The argument is unpersuasive because it ignores the factual context – including the time, place and circumstances – in which this case arises.

Certainly, the permit's explicit references to welding suggest that its scope and force could be limited to construction work specifically requiring welding or cutting with a torch; however, the broadly-worded fire safety precautions suggest that the permit might also apply to "cutting" that involves spark-generating metal saws. Although Berry's briefing hints at the view that the county permit should be limited to welding and torch-cutting, this argument is never clearly articulated. The Court concludes that in the present case, the permit and precautions could reasonably apply to sparking metal saws and that its requirements were sufficient to put Berry on notice of its duty, in the circumstances of this case, to take precautions to insure that neither the work of its crew, nor of the crew of its subcontractor, created a fire hazard.

Furthermore, if Hogan's cutting and the attendant fire dangers were merely the results of an unanticipated "rogue act" (Mot. at 12.), as Berry claims, there would be no purpose for it to hold meetings about fire safety. Holding a general contractor to a non-delegable duty to clear "all flammable materials...to mineral earth for a distance of ten feet from the joint worked on" and station another worker nearby for a fire watch (Sainsbury Decl., Ex. C, at 2.) cannot be viewed as unreasonable under the

circumstances of this case.

The pictures submitted with the declaration of Rolf Larsen, a U.S. Forest Service fire prevention technician, indicate that Hogan's cutting area was in the immediate proximity of vegetation. (Larsen Decl., Photo Log.) Additionally, Berry has not put forward any evidence that a fire watch was conducted. Thus there is, at a minimum, a genuine issue of fact regarding whether or not Berry complied with its nondelegable permit precautions.

Finally, it is notable that Berry's reply fails to engage the government's non-delegable duty theory. Although the government's opposition discusses the peculiar risk doctrine, the non-delegable duty doctrine, and the negligent undertaking doctrine <u>seriatim</u> (Opp. at 15-17.), the reply brief references the first and third theories and skips past the government's discussion of non-delegable duties. (Reply at 8-9.)

### 3. VIOLATION OF CALIFORNIA FIRE CODE AND PERMIT REQUIREMENTS

When an ordinance or statute is enacted to protect a certain class from a particular risk of harm, violation of that statute or ordinance is a <u>per se</u> breach of duty, absent an excuse or justification for the violation. <u>City of Los Angeles v. Shpegel-Dimsey, Inc.</u>, 198 Cal. App. 3d 1009, 1021 (1988). The party who violates a statute must show that it did "what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." <u>Roddiscraft, Inc. v. Skelton Logging Co.</u>, 212 Cal. App. 2d 784, 804 (1963). It is axiomatic that the hot-work precautions embodied in the Fire Code and the permit aim to safeguard all parties in areas of fire danger from the risk of harm posed by wildfire. Furthermore, as discussed above, Berry was itself required to comply with these rules. There is no evidence that a fire watch consistent with Fire Code requirements was maintained at the time Hogan was cutting the metal bolt from the drainage conduit, and other evidence indicates that vegetation was very close to the cutting area, inconsistent with permit and statutory requirements. (<u>See</u>, <u>e.g.</u>, Paulos Decl., Ex. 3, at Fire Code

Section 4901.5.3 "Hot work areas shall not contain combustibles" and 4901.6.3 "inspection of the hot-work site shall ensure that...the hot work site is clear of combustibles.") In light of Berry's pre-fire meetings regarding cutting and fire safety, there is a genuine issue of fact regarding whether Berry has an excuse for the statutory violation and could show that it nonetheless acted reasonably under the circumstances.

In its motion, Berry strongly contends that the Ventura County permit and the Fire Code do not define its duty. Specifically, Berry states that its scope of work did not include hot work (Sainsbury Decl. ¶¶ 6-7.); that it "compl[ied] with the plans and specifications" of the Project; and that the Project area "had been properly cleared and grubbed of vegetation" consistent with the Project requirements. (Mot. at 9, 12.) Because "the area of [the fire's] origin is outside the project limits" (Mot. at 12 (citing Sainsbury Decl. ¶¶ 15-16.)), Berry claims that it "did not have a duty to clear and grub the area where the fire originated." (Mot. at 12.) In sum and substance, these arguments suggest that the specifications of the contracted clearing-and-grubbing area and Berry's scope of work to be performed should establish the contours of Berry's legal duty. But there is no citation to any legal authority for this conclusion. The government's breach-of-statutory-duty theory also defeats Berry's motion for summary judgment on the negligence issue.

**4. CAUSATION**

Berry's fallback argument in support of summary judgment suggests that the "actions of...Hogan...were unforeseeable and his negligence was primary to the cause of the fire." (Mot. at 13.) Since "this act was unforeseeable," claims Berry, "and could not be anticipated by Berry or anyone else, Hogan's negligence is collateral as a matter of law" and cuts off Berry's relationship to the cause of the fire. (See Mot. at 13, 2.)

Because of the conclusions above—namely, that Berry had a legal duty in relation to the prevention of fire at the Construction Site, and that there is a genuine issue of material fact regarding whether Berry breached its duty—Berry's arguments

13

regarding causation properly assume the form of a "superseding cause" argument. To avoid liability based on this particular theory, Berry would need to prove that: (1) Hogan's negligence was not foreseeable to Berry, and (2) the nature of the resulting injury or risk of harm was not foreseeable to Berry. See Martinez v. Vintage Petroleum, 68 Cal. App. 4th 695, 700-01 (1998).

At the very least, the government has raised a genuine issue of fact regarding whether the risk of fire-related harm was foreseeable. In particular, the undisputed facts described above indicate that Berry employees at the Lake Piru site attended "welding and cutting" fire safety meetings just three days before the fire, and that Berry had held fire safety meetings less than a month before the Piru fire broke out. (Reply SGI Nos. 38, 39.) Furthermore, the government offers the declaration of Robert L. Jarvis, a civil engineering technician for the U.S. Forest Service, who states that "it is common for cutting and welding to occur during the installation of culverts, berm drains, [and] corrugated steel piping....In my experience, such cutting generally requires the use of either an abrasive saw or cutting torch."[6] (Jarvis Decl., Tab 2 of Pl. Evidence Opp., ¶ 6.) Given this evidence, there is a genuine issue of material fact regarding whether a fire risk due to Berry and Mendez's work at the Construction Site was foreseeable. Thus, a "superseding cause" argument will not support summary judgment in favor of Berry.

### 5. NEGLIGENCE AND THE GOVERNMENT'S REMAINING CLAIMS

#### *a. Public Resources Code Claim*

The government's second claim is derived from the California Public Resources Code § 4435. Under this section, if a "fire originates from the operation or use of any

---

[6] Berry objects to the Jarvis Declaration, stating that certain of Jarvis's opinions are unsupported. Berry specifically attacks Jarvis's opinion that if "hot work was contemplated for the installation of this pipe, a permit would have been required" and his opinion that cutting and welding work on the Project was reasonable within the scope of the construction. (See Jarvis Decl., ¶¶ 11, 8.) However, Jarvis's opinion regarding the common requirement of a cutting torch in installation of culverts is supported by his knowledge and experience with drainage projects as described in paragraph 5 of the declaration.

14

engine, machine...or any other device which may kindle a fire, the occurrence of the fire is prima facie evidence of negligence in the...operation...of such...device. If such fire escapes...and it can be determined which person's negligence caused such fire, such person is guilty of a misdemeanor." CAL. PUB. RES. CODE § 4435. By the averments in its complaint, the government seeks to use the Piru fire as "prima facie evidence of [Berry's] negligence," (Compl. ¶ 18.) and as Berry acknowledges, use of the statute "rel[ies] on the finding that the person who started the fire acted with negligence." (Mot. at 15.) Because, as determined above, Berry's negligence in relation to causing the fire is a genuine issue of material fact, summary judgment on the Public Resources Code claim is not proper.

### b. *Health & Safety Code Claims*

The government's third claim is derived from California Health & Safety Code sections 13007-13009.1. Under section 13007, any "person who...negligently...allows fire to be set to...the property of another...is liable to the owner of such property for any damages to the property created by the fire." CAL. HEALTH & SAFETY CODE § 13007. Similarly, under the subsequent sections, liability for property damage, Id. § 13008, fire suppression and emergency medical services costs, Id. § 13009(a), and fire investigation and accounting costs, Id. § 13009.1(a), are predicated on findings of negligent fire setting. Because Berry's negligence is a genuine issue of material fact, summary judgment on these claims is not proper.

### c. *Trespass Claim*

The government also states a trespass claim against Berry. Under Elton v. Anheuser Busch Beverage Group, Inc., 50 Cal. App. 4th 1301 (1996), a trespass exists where a party negligently starts a fire and there is an "invasion of the fire onto the plaintiffs' property." 50 Cal. App. 4th at 1307. Thus, a trespassory entry "may...be accomplished by setting in motion an agency which, when put in operation, extends its energy to the plaintiff's premises to its material injury." Id. Again, because of the

conclusion above that Berry's negligence in relation to the starting of the Piru fire is a genuine issue of material fact, summary judgment on the government's negligence-derivative trespass claim is not proper.

### d. Interest and Penalties Claim

The government finally makes a claim for damages under the Federal Debt Collection Act, 31 U.S.C. § 3717, seeking interest and penalties under state and federal law. Although Berry moves for summary judgment as to all of the government's claims, the government points out that "Berry's motion does not contest that, if held liable, it would be subject to interest and penalties under federal and state law." (Opp. at 24.) Thus, summary judgment regarding the interest and penalties claim is not proper.

## IV.
## CONCLUSION

Consistent with the reasoning expressed in greater detail above, the Court **DENIES** Berry's motion for summary judgment.

**IT IS SO ORDERED.**

DATED: February 3, 2010

_____
Judge Gary Allen Feess
United States District Court